UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
ANTHONY RUSSO,

                 Plaintiff,

            -against-                      <u>MEMORANDUM AND ORDER</u>
                                                   06-CV-06389 (RRM)(CLP)

PORT AUTHORITY OF NEW YORK & NEW
JERSEY; PORT AUTHORITY OF NY & NJ BOARD
OF COMMISSIONERS; KENNETH J. RINGLER, JR.,
Exec. Dir., Port Authority of NY & NJ; SAMUEL J.
PLUMERI, JR., Director of Public Safety/Superintendent
of Police, Port Authority Police Department;
CHRISTOPHER TRUCILLO, Chief, Port Authority Police
Department; BRIAN YONKER in his individual capacity
as well as in his capacity as an officer with the Port
Authority of NY & NJ; and JOHN or JANE DOES 1-10,

                 Defendants.
---------------------------------------------------------------- X

MAUSKOPF, United States District Judge.

      Plaintiff Anthony Russo brings claims pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging violations of his rights under the Constitution of the United States, as well as unspecified claims under the laws of the State of New York, in connection with his arrest for criminal possession of a weapon. The Court assumes the parties' familiarity with the underlying facts and procedural history of this case. Port Authority Police Officer Brian Yonker moves for summary judgment on Plaintiff's claims of false arrest, malicious prosecution and excessive force.[1] For the reasons set forth below, Defendant's motion is GRANTED.

---

[1] Defendant asserts and the record reflects that Yonker is the only defendant named in the Amended Complaint who was actually served with process and thus is the only remaining party to this action.

## BACKGROUND[2]

On March 14, 2005, Russo was at LaGuardia Airport en route from New Jersey to his home in Florida. While checking in for his flight, he informed the ticket agent that he was also checking two firearms. A few minutes later, following a call by the ticket agent, Russo was approached by an agent with the Transportation Security Administration, who informed Russo that he had to take his bags to the security area. Immediately thereafter, and before Russo went to the security area, Russo was approached by Yonker and a number of other Port Authority Police Officers. Yonker secured Russo's handgun and shotgun and then asked Russo about his authorization to carry these guns. Although there is a dispute as to whether Yonker asked specifically if Russo had New York license for his handgun, or merely asked generally if he was authorized to carry firearms, Russo admits that he told Yonker that did not have a New York license, and claimed that federal law nonetheless entitled him to legally transport these weapons. It is undisputed that Russo did not produce any documentation or other information concerning either his ownership of or his right to possess the weapons in New York, or in New Jersey where he was traveling from, or Florida, where he was traveling to. It is also undisputed that he provided no documentation regarding his right to transport a handgun or shotgun, other than his general reference to federal law. Yonker then advised Russo that he would either confiscate the weapons or arrest Russo. Russo refused to allow the firearms to be confiscated, and Yonker arrested him, charging him with Criminal Possession of a Weapon in the Fourth Degree, in violation of New York Penal Law § 265.01(1).

According to Russo, as Yonker handcuffed Russo, he pulled Russo's hands up high behind his back, and then either "thr[ew] them down violently" or "releas[ed] them,"[3] causing

---
[2] The facts are taken from the pleadings, Rule 56.1 statements, and exhibits thereto, and are taken in the light most favorable to the Plaintiff. Disputes are noted.

[3] Russo's various submissions describe Yonker's acts both ways.

2

Russo to cry out in pain as his neck was "jerked violently." Russo also claims that Yonker "twisted" the handcuffs. Russo was then "pushed and prodded" into the backseat of a police car, where he claimed he was forced to squat on the backseat because the driver's seat was pushed all the way back during the brief ride from the scene of the arrest to a police facility at the airport. Russo spent the night at this facility. Officer Yonker swore out the criminal complaint against Russo, alleging a violation of New York Penal Law § 265.01(1). On July 11, 2005, the charges against Russo were adjourned in contemplation of dismissal pursuant to N.Y. Criminal Procedure Law Section 170.55, and were ultimately dismissed on January 10, 2006.

## DISCUSSION

### I.  Summary Judgment Standard

Summary judgment is warranted where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the movant has shown that there is no genuine issue of material fact, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in their favor." Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001). In determining whether genuine issues of fact exist, the court will "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought..." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).

### II.  False Arrest/Imprisonment

Russo argues that his arrest violated his Fourth Amendment right to be free from unreasonable seizure, which includes the right not to be arrested without probable cause. Jaegly

v. Couch, 439 F.3d 149, 151 (2d Cir. 2006). The Court disagrees and dismisses this claim because even under Russo's version of the facts, Yonker had probable cause to arrest Russo for Criminal Possession of a Weapon in the Fourth Degree under the New York Penal Law.

Probable cause exists if the arresting officer has "knowledge or reasonable trustworthy information of facts or circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause does not require that a good faith belief ultimately be proven right or that it is more likely true than false. Texas v. Brown, 460 U.S. 730, 742 (1983). Where the material facts are undisputed, probable cause is a question of law, not fact. See Walcyzk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007).

Russo argues that the Firearm Owners Protection Act, 18 U.S.C. § 921 et seq. (the "FOPA"), in particular § 926A on the "Interstate Transportation of Firearms," should have shielded him from arrest under N.Y. Penal Law § 265.01(1). Russo argues that he complied with the FOPA, that the FOPA pre-empts § 265.01(1), and that because a reasonable officer would have known this, Yonker lacked probable cause to arrest Russo. Russo contends that Yonker was at least required to inquire into whether Russo was actually complying with the FOPA.

Although the parties focus on Russo's compliance with § 926A, neither the FOPA's primacy nor Russo's actual guilt need be determined here; the key inquiry is whether an officer of "reasonable caution" would be justified in believing that Russo was committing a crime. See, e.g., Torraco v. Port Auth. of N.Y. & N.J., 539 F. Supp. 2d 632, 644-47 (E.D.N.Y. 2008). Even if Yonker had known of the FOPA, he would have had probable cause to arrest Russo, because he would have had a reasonable basis for believing that Russo was not covered by the FOPA. When Yonker arrested Russo, he knew that: (i) Russo had informed the ticket agent that his luggage included two firearms, which he sought to check in for transport to Florida; and (ii)

Russo did not produce documentation, including a New York permit, concerning either his ownership of or his right to transport the handgun in his luggage.[4] Indeed, Yonker faced someone who could not show that he could legally possess or carry a firearm in any state, let alone in both the departure and destination states, as required by the FOPA. Russo's protests that he was entitled to carry a firearm under federal law, without any documentary or other support, do not alter the probable cause analysis for Russo's New York Penal Law violation. See, e.g., id. at 648 ("a police officer who finds someone carrying a gun in New York City, with no documentation, is not legally obligated to simply take the suspect's word that his possession is legal when New York law says that it is not."). A reasonable officer, even one aware of the FOPA, would be justified in not accepting Russo's unsupported explanation and would still have had a reasonable basis to make the arrest under these circumstances.[5]

Russo's argument that Yonker was required to investigate Russo's claims before arresting him is also unavailing. Given the reasonable basis that Yonker already had for arresting Russo, Yonker did not need to conduct further inquiry into Russo's allegations that he was acting in conformity with federal law. See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is

---

[4] The parties dispute whether Yonker specifically asked Russo whether he was authorized to carry firearms in states other than New York. It is undisputed, however, that Russo did not produce documentation demonstrating such an authorization.

[5] Contrary to Russo's assertions, one should not assume that a reasonable officer would be familiar with the FOPA. As our sister court stated in its comprehensive and persuasive analysis of the statute, when one considers "the narrowly targeted scope of the statute, the extremely limited authority under it despite more than 20 years since its enactment, and the difficulty of its application in the field...there is no justification for that assumption." Torraco, 539 F. Supp. 2d at 647–48. This is especially so because § 926A only pre-empts state and local firearms laws where those laws are irreconcilable with the federal statute. Id. at 648 ("[i]t is particularly inappropriate to presume knowledge of the statute because...the statute does not effect field pre-emption, but conflict pre-emption"). A reasonable officer would therefore typically look to state and local firearms laws as the only relevant authority in this area. Id. Under the circumstances, it was certainly reasonable for him to arrest Russo under § 265.01(1). Yonker faced a man preparing to board a plane, in possession of two weapons which he was not authorized to carry in New York, in violation of New York law, and who refused to allow his weapons to be confiscated.

5

not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.").

### III. Malicious Prosecution

Russo's malicious prosecution claim is also DISMISSED. Russo does not contest Yonker's arguments for dismissal of this claim in his Opposition and indeed does not even mention the claim at all. Because of Russo's abandonment of this claim, the claim is hereby dismissed. See, e.g., Blake v. Race, 487 F. Supp. 2d 187, 217 (E.D.N.Y. 2007) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

Moreover, this claim fails on the merits. To establish a claim for malicious prosecution, Russo must establish that 1) the defendant commenced a criminal proceeding against him; 2) the proceeding was terminated in his favor; 3) there was no probable cause for the proceeding; and 4) the proceeding was instituted with actual malice. Janetka v Dabe, 892 F.2d 187, 189 (2d Cir. 1989). Here, Plaintiff cannot prove two critical elements of his claim.

First, as discussed above, Police Officer Yonker had probable cause to make the arrest in this case. While probable cause is measured, for purposes of a claim of malicious prosecution, at the time the criminal proceeding commences, see Lovelace v. City of New York, No. 02-cv-5398, 2005 WL 552837 at *2 (E.D.N.Y. March 9, 2005), here, it was Police Officer Yonker who swore out the criminal complaint based on his personal knowledge of the facts and circumstances leading up to Plaintiff's arrest. As such, the same facts which give rise to probable cause for the arrest are those which support probable cause for the initiation of criminal proceedings against Russo.

Second, Plaintiff cannot establish that the criminal proceeding was terminated in his

6

favor. A proceeding is terminated against an accused only if it the final disposition indicates that the accused is not guilty. See Singleton v. City of New York, 632 F.2d 185, 193 (2d Cir. 1980). An adjournment in contemplation of dismissal pursuant to N.Y. Crim. Proc. Law § 170.55 does not constitute a termination of a criminal proceeding in favor of the accused that satisfies this requirement of a malicious prosecution claim under § 1983. Id. See also Roesch v. Otarola, 980 F.2d 850 (2d Cir. 1992).

## IV. Excessive Force

Russo alleges that Yonker used excessive force when he handcuffed him. Specifically, Russo asserts that Police Office Yonker lifted Russo's arms up high behind his back and then either threw them down or released them, "causing [Russo] to falter and his neck to be jerked violently" and causing Russo to cry out in pain. According to Russo, this exacerbated pre-existing back injuries, causing "severe damage to Russo's neck" and resulting in shingles, sleeplessness, extreme discomfort and worsening neurological problems. Russo also alleges he was "pushed and prodded into the police car with unnecessary roughness," and was forced to sit in the cramped back seat of the vehicle on the brief drive from the scene of the arrest to a police facility at the airport.

To prevail on his excessive force claim, Russo must prove that the force used against him was objectively unreasonable under the Fourth Amendment. Graham v. Conner, 490 U.S. 386, 395 (1989). In evaluating the reasonableness of a particular use of force, a court should consider the specific circumstances, including the severity of the crime, whether the suspect poses an immediate threat and whether he is actively resisting arrest. Id. at 396. Courts have long recognized that a police officer's right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. For a claim of excessive

7

force to be actionable, a plaintiff must demonstrate that it was "objectively sufficiently serious or harmful." United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999). In other words, "the force used by the defendant [generally] must be more than de minimis in order for the plaintiff's claim to be actionable." Jennejahn v. Vill. of Avon, No. 06-CV-6054T, 2008 WL 4000404, at *4 (W.D.N.Y. Aug. 22, 2008) (internal quotation omitted). Courts look to whether there was any injury in determining whether a use of force was de minimis, and a plaintiff's inability to demonstrate any injury will be fatal to their excessive force claim. McAllister v. N.Y. City Police Dep't, 49 F. Supp. 688, 699 (S.D.N.Y. 1999). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396 (internal quotation omitted).

Russo has failed to make any showing that Yonker's use of force was unreasonable under the circumstances. Even crediting the more serious account that Yonker threw Russo's hands down violently, causing him to cry out, Yonker's actions involved no more than a de minimis use of force, as Plaintiff cannot establish that he suffered any resulting injury. See, e.g., Vogeler v. Colbath, No. 04 Civ. 6071 (LMS), 2005 WL 2482549, at *10 (S.D.N.Y. Oct. 6, 2005) (granting summary judgment on excessive force claims where plaintiffs were lifted off the ground by their arms as they were handcuffed but sustained no injury). Although proof of severe or permanent injury is not required to establish excessive force, see, e.g., Robison v. Via, 821 F.2d 913, 924-25 (2d Cir. 1987), a plaintiff must show some injury to do so. McAllister, 49 F. Supp. at 699. Russo fails to show that he suffered any physical injury at all. Beyond yelling out immediately after his hands were cuffed, Plaintiff does not even claim that he alerted Yonker or anyone else involved in processing or detaining him of his purported injury. He does not allege soreness, bruising, or any other physical manifestation of the actions taken by Officer Yonker in handcuffing and/or transporting Plaintiff. Russo never requested or sought medical treatment for his alleged injuries,

8

either immediately upon the alleged injury or thereafter. Summary judgment will be granted where, as here, a plaintiff does not demonstrate any physical injury. See, e.g., Murphy v. Neuberger, 94 Civ. 7421, 1996 WL 442797, at *8 (S.D.N.Y. Aug. 6, 1996); Landy v. Irizarry, 884 F. Supp. 788, 799 n.14 (S.D.N.Y. 1995); Vogeler, 2005 WL 2482549, at *10 (S.D.N.Y. 2005) (granting summary judgment on excessive force claims where plaintiffs were lifted off the ground by their arms as they were handcuffed but sustained no injury).

The only evidence of Russo's alleged injuries suffered as result of this incident comes from an evaluation conducted by a psychologist retained in connection with the instant litigation in a single office visit well over two years after the incident at LaGuardia Airport. The evaluation is based solely on information provided by Russo himself, and references a history of pre-existing physical and psychological issues. It does not squarely address whether the handcuffing complained of caused Russo's alleged injuries, noting only that Russo showed symptoms consistent with post traumatic stress syndrome. See Gibeau v. Nellis, et al., 18 F.3d 107 (2d Cir. 1994) (causal connection between event and injury required). Even assuming that any psychological harms suffered by Russo were caused by Yonker, these are insufficient to form the basis for an excessive force claim. Roundtree v. City of N.Y., 778 F. Supp. 614, 622 (E.D.N.Y. 1991).

Even under the most generous construction of the allegations and the facts supporting them, Russo cannot demonstrate that he was subjected to objectively unreasonable force by Yonker. Courts have repeatedly granted summary judgment in circumstances similar to these. See, e.g., Jennejahn, 2008 WL 4000404, at *3-7; Esmont v. City of N.Y., 371 F. Supp. 2d 202, 213-15 (E.D.N.Y. 2005) (granting summary judgment on excessive force claim where arresting officer caused plaintiff to bump her head as she was put in the parole car, causing a headache,

and tight handcuffing caused bruising, swelling and unsubstantiated nerve damage); Roundtree, 778 F. Supp. at 622. Yonker's motion on this claim is therefore GRANTED.

## CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED in its entirety and all pending claims against Police Office Brian Yonker are DISMISSED. As there are no remaining parties to this action, the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2008

ROSLYNN R. MAUSKOPF
United States District Judge